# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**SANDRA RICHARDSON**                                                       **PLAINTIFF**

**v.**                                                   **CIVIL NO. 3:20-cv-00451-DPJ-RHWR**

**KILOLO KIJAKAZI,**[1]                                                      **DEFENDANT**
*Acting Commissioner of Social*
*Security Administration*

## REPORT AND RECOMMENDATION

Plaintiff Sandra Richardson seeks judicial review of the decision of the Commissioner of the Social Security Administration, denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Plaintiff filed a Motion for Summary Judgment [11]. Defendant, the Commissioner of the Social Security Administration, filed a Brief [15] in response, and Plaintiff a Rebuttal [16]. Having considered these submissions, the administrative record, and relevant law, the undersigned recommends that the decision of the administrative law judge ("ALJ") be affirmed because the ALJ applied the proper legal standards and cited substantial evidence to support the conclusion that Plaintiff could "perform simple, routine, repetitive tasks, but not at a production rate pace (e.g. assembly line work)."

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is automatically substituted, in place of Andrew Saul, as Defendant in this action. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

I. BACKGROUND

On April 12, 2016, when she was 45 years old, Plaintiff applied for SSI, alleging an onset date of August 22, 2015. [9] at 14, 99-100, 205. Plaintiff asserted in her application that she was disabled due to degenerative disc disease, chronic obstructive pulmonary disease (COPD), asthma, "heart," depression, and blood clots. *Id.* at 112. After Plaintiff's claim was denied at the initial and reconsideration levels, she requested a hearing before an ALJ, and a hearing was held on August 28, 2018. *Id.* at 33-59. Plaintiff and a vocational expert testified. A supplemental hearing was held on August 1, 2019, at the request of Plaintiff after the ALJ sent vocational interrogatories to a vocational expert who responded to them. *Id.* at 14. Plaintiff and a vocational expert testified at the supplemental hearing. *Id.* at 61-77.

On August 19, 2019, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 14-25. After the Appeals Council denied Plaintiff's request for review on May 27, 2020, Plaintiff filed this action under 42 U.S.C. § 405(g), which grants the Court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

In making the determination that Plaintiff was not entitled to benefits, the ALJ utilized the five-step evaluation process set forth in 20 C.F.R. § 416.920. *Id.* at 15. The ALJ determined, sequentially, whether Plaintiff (1) was engaged in substantial gainful activity; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P,

App. 1; (4) could perform the requirements of past work; and, if not, (5) based on Plaintiff's age, work experience, and residual functional capacity ("RFC"), could adjust to other work that existed in significant numbers in the national economy.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her application date of April 12, 2016. [9] at 16. At step two, the ALJ concluded that Plaintiff's status post repair of a vesicovaginal fistula, diabetes mellitus, COPD, asthma, degenerative disc disease, neuropathy, chondrocostal junction syndrome Tietze, obesity, post-traumatic stress disorder, anxiety, and depression were severe impairments. *Id.* at 16-17. The ALJ found that Plaintiff's hyperlipidemia, sleep apnea, and history of congestive heart failure were not severe impairments. *Id.* at 17. At step three, the ALJ determined that Plaintiff's severe impairments or combination of impairments did not meet or medically equal the requirements of a listed impairment. *Id.* at 18-20.

Before reaching step four, the ALJ assessed Plaintiff's symptoms and limitations, finding that Plaintiff retained the RFC to perform sedentary work except she could only occasionally climb ramps and stairs, never climb ropes, ladders, or scaffolds; occasionally balance, stoop, crouch, kneel, and crawl; occasionally work around dust, odors, fumes, gases, and other pulmonary irritants; never work in extreme cold or heat; and never work around unprotected heights and moving mechanical parts. *Id.* at 20-21.

> The ALJ crafted the mental RFC, the subject of this appeal, as follows:
>
>> She can perform simple, routine, repetitive tasks, but not at a production rate pace (e.g. assembly line work). She can make simple

3

> work-related decisions. She can occasionally interact with co-workers, supervisors, and the general public. She can respond appropriately to changes in a routine work setting. In addition to normal breaks, she would be off task five percent of the time in an eight-hour workday.

*Id.*

At step four, Plaintiff had no past relevant work. *Id.* at 24. At step five, upon consideration of vocational expert testimony, the ALJ found Plaintiff was not disabled from her application date of April 12, 2016, through August 19, 2019, the date of the ALJ's decision, because she could perform other jobs existing in significant numbers in the national economy, including those of a lens inserter, a folder, and an implant polisher. *Id.* at 24-25.

Plaintiff asserts that the ALJ failed to recognize or account for, and possibly ignored, the opinion of consultative examining psychologist Nicholas Schmidt, Ph.D., that Plaintiff's ability to perform routine or repetitive tasks, in relation to employment, was poor. [12] at 10-11, [16] at 1. Defendant counterargues that the ALJ was not required to mirror a medical opinion, and the ALJ performed his duty of weighing all the evidence to make an RFC finding.[2] [15] at 11-13.

## II.  ANALYSIS

### A.  Standard of Review

The Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the

---

[2] Plaintiff abandoned in her Rebuttal the argument that the ALJ should have analyzed Dr. Schmidt's opinion using the factors required by *Newton v. Apfel,* 209 F.3d 448, 456 (5th Cir. 2000) and 20 C.F.R. § 416.967. Plaintiff conceded that Dr. Schmidt was not a treating source but a consultative examiner. [16] at 1.

4

Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations and internal quotations and brackets omitted).

In applying the substantial evidence standard, the Court "may not re-weigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). The ALJ has the sole responsibility for determining a claimant's disability status at the hearing level. *See Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). "In doing so, the ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." *Id.* (internal citation omitted).

B. <u>Dr. Schmidt's Comprehensive Mental Evaluation</u>

Plaintiff's assignment of error is limited to challenging the mental RFC, focusing particularly on a sentence in the report that provides, "[t]he Patient's ability to

5

perform routine and repetitive tasks, in relation to employment, appears to be poor." [10] at 349. Plaintiff argues that the ALJ erred by failing to recognize or account for this finding and possibly overlooked the finding completely because the ALJ otherwise incorporated "almost all of Dr. Schmidt's opinion, while this element was not." [12] at 10-11, 17. [16] at 1-2. Plaintiff alleges an inconsistency exists between a "poor" ability to perform routine and repetitive tasks and the RFC finding that Plaintiff could "perform simple, routine, repetitive tasks, but not at a production rate pace (e.g. assembly line work)." [12] at 17, [16] at 3.[3] Defendant points out that Plaintiff does not mention that the ALJ also found that "[i]n addition to normal breaks, she would be off task five percent of the time in an eight-hour workday". [15] at 5.

The ALJ was not required to reiterate the conclusions of Dr. Schmidt. Rather, the RFC is an administrative finding, not a medical finding, and the sole responsibility of the ALJ to determine. *Taylor v. Astrue,* 706 F.3d 600, 602-03 (5th Cir. 2012); *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003). Unlike Dr. Schmidt, the ALJ had the ability to review all the evidence. It was his responsibility alone to weigh the evidence, resolve conflicts in the evidence, and fashion an RFC consistent with the whole record. *Moore,* 919 F.2d at 905.

Dr. Schmidt's opinion regarding Plaintiff's ability to perform tasks was considered. [9] at 19. The ALJ expressly recognized that Dr. Schmidt found Plaintiff's

---

[3] Dr. Schmidt's report defines "poor" as "ability to function in this area is seriously limited but not precluded." [10] at 351.

6

"episodic depressive symptoms may interfere with her ability to perform tasks." *Id.* at 19, 24. But the ALJ also observed Dr. Schmidt's findings that Plaintiff had a "fair" ability with regard to simple job instructions, initiated tasks on her own, could reliably perform simple calculations, and demonstrated generally intact concentration/attention. *Id.* at 19-20, 23-24.

The ALJ compared Dr. Schmidt's opinion to Plaintiff's mental health treatment records and concluded that "[o]verall, the records show that the claimant's symptoms were well managed on an outpatient basis with regular treatment." *Id.* at 20. The ALJ noted the treatment records "were generally normal apart from mood/affect", "generally revealed intact concentration/attention", and "show[ed] that her depression and anxiety were good if she was compliant with medication". *Id.* at 19. The ALJ considered that Plaintiff's psychiatric findings were normal. *Id.* The ALJ observed that Plaintiff began treatment at Weems Community Mental Health in February 2017 and was referred there by her lawyer rather than a doctor. [9] at 19.

The ALJ appropriately fashioned the mental RFC based on the entire record. The ALJ's decision should be affirmed because Plaintiff has not demonstrated that the ALJ made any error of law, and there is substantial evidence supporting the ALJ's conclusion that Plaintiff could "perform simple, routine, repetitive tasks, but not at a production rate pace (e.g. assembly line work)."

## III. RECOMMENDATION

The ALJ's August 19, 2019, decision should be affirmed, and Plaintiff's appeal dismissed with prejudice.

## IV. NOTICE OF RIGHT TO OBJECT

Within fourteen days after being served with a copy, any party may serve and file with the Clerk of Court written objections to this Report and Recommendation. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection. L.U.Civ.R. 72(a)(3).

A district judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. A district judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 3rd day of January, 2022.

*s/ Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE